# CHARLESTON.

PETRY v. CABIN CREEK CONSOLIDATED COAL COMPANY.

Submitted February 8, 1916.   Decided February 29, 1916.

1. MASTER AND SERVANT—*Mining Company—Right to Make Rules.*

    A corporation engaged in the business of mining and removing coal, and using cars in the mine for the purpose of hauling coal from one part of the mine to another, has the right to prevent, in a proper way, the employees working in the mine from riding on such cars.   (p. 658).

2. SAME—*Suspension of Rules—Presumption.*

    The defendant, a corporation engaged in the business of mining and removing coal, adopted the following rules for the government of its employees, namely: "Rule No. 14: All persons who ride upon the incline or upon any car, engine or motor, do so at their own risk. Rule No. 15: No employee shall travel to or from his work upon any slope, plane or motor road when any other road is provided or may be used, and employees shall also avoid as far as possible using any haulway in traveling to or from their work, but where it becomes necessary to travel any slope, plane or motor road, or haulway employees must use every precaution to prevent accident to themselves and others." *Held:* That if such corporation shall knowingly and habitually permit its employees to disregard such rules, it may be presumed that the rules have been suspended.   (p. 658).

3. SAME—*Injury to Servant—Negligence—Defense—Promulgation of Rules—Assumption of Risk.*

    A corporation engaged in mining and removing coal, cannot relieve itself from responsibility for damages sustained by its employees, caused by the negligence of the employer, by adopting and promulgating a rule, such as Rule 14 quoted above, which does not forbid employees riding on the employer's cars while at work in the mine, but seeks to make the employees assume all risks, and thereby relieve the employer from responsibility for damages caused by its own negligence.   (p. 658).

4.  SAME—*Injury to Coal Mine Employe—Violation of Rules.*

When a coal company adopts a rule for the government of persons working in its mines, such as Rule 14 quoted above, and notwithstanding the rule permits its employees to ride on its cars while at work in the mine, and an employee without fault or negligence on his part is injured by the negligence of the company while engaged in its business and while on such car, the company can be compelled to respond in damages for injuries so caused by its negligence. (p. 658).

5.  SAME—*Injury to Servant—Contributory Negligence.*

In an action to recover damages for injuries caused by the negligence of the defendant, if the plaintiff has been guilty of contributory negligence, he cannot recover. (p. 658).

6.  TRIAL—*Instructions—Ignoring Defenses—Injury to Servant—Contributory Negligence.*

When contributory negligence is relied on in defense of an action for wrongful injury, a hypothetical instruction directing a finding in favor of the plaintiff, which omits any reference to the facts tending to establish contributory negligence, and entirely ignores such defense, is erroneous. (p. 662).

Error to Circuit Court, Kanawha County.

Action by John Wesley Petry against the Cabin Creek Consolidated Coal Company. Judgment for plaintiff, and defendant brings error.

*Reversed, and new trial awarded.*

*Brown, Jackson & Knight* and *Geo. S. Couch,* for plaintiff in error.

*W. R. Thompson, E. B. Dyer,* and *Morgan Owen,* for defendant in error.

MASON, JUDGE:

This is a writ of error to a judgment of the circuit court of Kanawha county, in an action brought by John Wesley Petry to recover damages for personal injuries.

At the time of the accident the plaintiff was about 39 years of age. He was a miner, having worked about the mines in various capacities about twenty years. He was employed by the defendant, the Cabin Creek Consolidated Coal Company, at the time of the accident, as a laborer in the mines, to help lay tracks. Just before the accident he had been assigned to work in Room No. 31. He was required to pre-

pare that room for laying tracks in it. He says: "I was getting ready to lay a piece of track, and when I got ready for this, I didn't have any ties there." A car loaded with coal, drawn by a mule, passed by this room, and the plaintiff got on the rear end of the car, intending to ride to another part of the mine to see the foreman about some ties to be used in laying track. When the car had gone along the hallway some 300 or 400 feet from where the plaintiff got on it, it struck against a post or prop which supported the roof, and broke the post or knocked it down, which caused some overhead slate to fall, striking the plaintiff and causing the injury complained of. The car was not in good repair. A strap which went around the car was loose, and it is claimed that one part of this iron strap extended out from the side of the car and struck against the post, causing it to fall. It is also claimed that the sides of the car were "bulged out", so that it struck the post in passing. The evidence is not clear as to why the car struck the post. It does appear that the post was struck and knocked out of its place, and that the slate was loosened and fell on the plaintiff while he was on the car, and injured him. It was not the duty of the defendant to carry the plaintiff on the car, and the duties of the plaintiff did not require him to be on the car at this time. He got on the car of his own volition to ride to another part of the mine, instead of walking.

The defendant had adopted rules for the government and operation of its mines, and, it seems, caused them to be posted according to law. Rule No. 14 is as follows: "All persons who ride upon the incline or upon any car, engine or motor, do so at their own risk." Rule 15 is: "No employee shall travel to or from his work upon any slope, plane or motor road when any other road is provided or may be used, and employees shall avoid as far as possible using any haulway in traveling to and from their work, but where it becomes necessary to travel any slope, plane or motor road, or haulway employees must use every precaution to prevent accident to themselves and others."

It was not necessary that the plaintiff in going from Room No. 31 where he had been working to another part of the mine, to pass through Room No. 34, where the track was. Defendant

also offered proof to show that the mine foreman ordered the plaintiff before the accident to remove the post, and that he did not do so.

The defendant demurred to the declaration. Nothing is alleged in support of the demurrer, except that the declara- tion avers that it was the duty of the defendant to keep its mine, cars, machinery and appliances in repair, and to furnish plaintiff a reasonably safe place to work. The contention of the defendant is that this is not a true statement of the duty owed by the employer to the employee. It is said that this would make it the absolute duty of the employer to furnish safe appliances, etc., while the law only requires that the duty is to use reasonable care and diligence to fur- nish safe and suitable machinery, etc.

This contention is not tenable. True, the declaration in stating the duties that the defendant owed, averred that it was the duty of the defendant "to furnish to the plaintiff a reason- ably safe place in which to work, and proper and safe appli- ances, cars, tools and machinery with which to work", but in that part of the declaration averring the breaches of duty, it is alleged that the defendant "wrongfully and negligently failed to provide for the use of plaintiff tools, appliances and machinery reasonably safe with which to work." If the clause of the declaration averring the duties of the defendant may be construed as meaning that it was the absolute duty of the defendant to furnish appliances, etc., more than reason- ably safe, this error (if an error; and we are of opinion that stating the duty to be greater than the law requires is not error) is cured by the averment that the defendant wrongfully and negligently failed to provide appliances, etc., reasonably safe with which to work. "In an action by a servant against the master, it is generally necessary to distinctly allege the duties of the defendant to the plaintiff charged to have been violated; but if what is averred in the declaration, in con- nection with the manner of averring a breach of those duties, sufficiently shows what such duties are, the declaration will be regarded good on demurrer, the allegations of duty in such cases being superfluous." *Squilache* v. *Tidewater Coal & Coke Co.*, 64 W. Va. 337.

There was a verdict for plaintiff for $5,0000.00, motion to

set aside the verdict, as being contrary to the law and the evidence, motion overruled and judgment for the plaintiff; defendant brings the case to this court on writ of error.

The defendant asked the court to instruct the jury "that the evidence in this case is not sufficient to support a verdict for the plaintiff, and they must, therefore, find for defendant", which was refused, and the defendant excepted.

The learned counsel for the defendant in their brief insist that the evidence shows that the accident was caused by plaintiff's own negligence and failure of duty; that he had been directed to remove the post against which the car struck, causing the accident; and that if he had obeyed a proper order, the post would have been removed, and the accident would not have occurred. It is sufficient to say that the evidence was contradictory as to whether the plaintiff was ordered to take down the post; and the court could not withdraw the question from the jury. It is also contended that the plaintiff was not employed to do any work which made it necessary for him to use or ride on the car; that he got on it as a matter of convenience to himself; and that in addition to the risk and dangers he thus voluntarily assumed, by Rule 15, before referred to, he was forbidden riding on such cars at that place; and that by Rule 14 he was notified, that if he did so, he did it at his own risk. We do not think that these rules created an absolute bar for negligence committed by the defendant.

The defendant certainly had the right to prohibit any one, whether an employee or not, from riding on its cars in the mine, and to enforce such order in a proper way, but it cannot enforce compliance with such order by knowingly permitting it to be violated, and at the same time absolve itself from injuries caused by it, by reason of want of reasonable care. The defendant could not under the guise of rules promulgated by itself, evade duties imposed upon it by law. The plaintiff was properly permitted to offer evidence to show that employees of the defendant frequently rode on these cars in going to and returning from their work in the mine, with the knowledge of and without objections from the defendant.

The court did right in refusing to give a binding instruction requiring the jury to find for the defendant.

The following instructions were asked for by the plaintiff and given over the objection of the defendant:

"No. 1.   The Court instructs the jury, that if they believe from the evidence in this case that the plaintiff was in the employ of the defendant at the time he was injured, and was in the line of his duty and was performing the work he was employed to do in the customary manner in said mine, and that the mine car upon which he was riding was out of repair and had been so out of repair for a sufficient length of time before the accident for the defendant by reasonable diligence to have discovered said mine car's condition, and the accident which caused plaintiff's injury was caused by said car being out of repair, you should find for the plaintiff, and assess his damages at such sum as in your judgment will compensate him for his injury and pain and suffering, not exceeding $25,000.00.

"No. 2.   The court instructs the jury that if they believe from the evidence that the defendant company had made and posted rules at its mine, when the accident testified to in this case occurred, which prohibited its employees from riding on cars in its mines and that said rule was disregarded by its employees to the knowledge and with the acquiescence of the defendant company, and that defendant company neglected to enforce said rule, such conduct of defendant company is a suspension of said rule."

The following instructions were asked for by defendant, all of which were given except No. 1:

"No. 1.   The Court instructs the jury that the evidence in this case is not sufficient to support a verdict for the plaintiff, and they must, therefore, find for the defendant.

"No. 2.   The Court instructs the jury that the defendant, upon its own premises, was using the car upon which the plaintiff was riding, in a lawful manner, in the transaction of its business.

"No. 3.   The court instructs the jury that the evidence does not show that the plaintiff was injured wilfully or wantonly by the defendant, and that the defendant cannot, under the evidence, be charged with having wilfully or wantonly injured the plaintiff.

"No. 4.   The Court instructs the jury that the employer is

not an insurer of the safety of the employe, and that an employe accepts service subject to the known risks and dangers incident thereto, and further that if the jury believe from the evidence that the plaintiff in this case wilfully encountered dangers known to him or patent and open to be seen and known, he cannot recover damages from the defendant for injury therefrom.

''No. 5. The Court instructs the jury that an employe who continues in the service of his employer after notice of a defective condition increasing the dangers of the service, assumes the risks as increased by the defective condition, and the Court therefore instructs the jury that if they believe from the evidence in this case that the post referred to in the evidence was too close to the track or that the roof was in a dangerous and unsafe condition, and that the plaintiff knew of the dangerous position of said post, or the dangerous and unsafe condition of said roof, and remained in ,the service of the defendant after knowledge of said fact, then and in that event the plaintiff assumed the additional risks occasioned thereby.

''No. 6. The Court instructs the jury that the plaintiff in entering the employment of the defendant assumed all. the ordinary and usual risks of the service known to him or which by the exercise of ordinary care could have been discovered, and if the jury believe that the proximate cause of the plaintiff's injury was the spreading of the sides of the car or the iron belt on the car, and that the dangers of same were among the ordinary and usual risks and hazards of such service, then the jury should find for the defendant.

''No. 7. The Court instructs the jury that by entering upon and continuing in service in an unsafe place, the dangers of which are known and fully appreciated by him, the employe waives the performance by the master, of the duty imposed upon him by law, in respect to the safety of the place in which the service is performed, and further if you believe from the evidence in this case that the plaintiff knew and appreciated that the place where the accident occurred was unsafe, and continued in the service of the defendant after knowing and appreciating the same, then and in that event he assumed the risks of. the dangers incident to the use of said place.

"No. 8.   The Court instructs the jury that if you believe from the evidence that the plaintiff was an experienced mine man at the time of the accident and that he failed to take down and remove the post referred to in the evidence after being told so to do by the mine foreman, and that his failure to take down and remove said post was the proximate cause of the accident complained of, and that but for said failure the accident would not have happened, notwithstanding defects (if there were any) in the car upon which plaintiff was riding, then the plaintiff cannot recover, and you must find for the defendant.

"No. 9.   The Court instructs the jury that the law in force in this State at the time of the accident complained of provided that the operator of every mine in this state should adopt special rules for the government and operation of his mine or mines, covering all the work pertaining thereto inside and outside of the same; and that such rules when established should be printed on cardboard and posted in the drum house, tipple or other conspicuous place about the mines where the same could be seen and observed by all the employes at each mine; and further, that when such rules were so posted the same should operate as a notice to all employees at such mines of their acceptance of the contents thereof.

"No. 10.   The Court instructs the jury that if you believe from the evidence that the rules and regulations of the defendant Company which were in force at the time of the injury complained of provided that all persons who rode upon its cars did so at their own risk and that said rules were posted at defendant's tipple, or some other conspicuous place about its mine where the same could be seen and observed by all employes at such mine, then in arriving at your verdict you cannot take into consideration the condition of the car upon which the plaintiff was riding at the time the accident occurred.

"No. 11.   The Court further instructs the jury that in order to render a verdict they must unanimously agree as to such verdict; and that it is wrong for any juryman to allow any issue in this case to be decided by a majority vote against his belief derived from the evidence, and further that each juryman must be guided by his own belief from the evidence, even

though such course may result in a failure of the jury as a whole to agree."

It is insisted by counsel for defendant that instruction No. 1, given at the instance of the plaintiff. is erroneous. It is a hypothetical instruction based upon what plaintiff claims to be the material facts in the case. The criticism of this instruction is that it omits an essential element in the case; namely, that of contributory negligence. "An instruction which undertakes to cover the whole case and to state all the circumstances and conditions necessary to be considered by the jury in arriving at their verdict, and which omits an essential view of the case, is erroneous." *Bowles' Case,* 103 Va. 817; *Life Ins. Co.* v. *Bailey,* 101 Va. 443. These cases are in accord with the uniform rulings of this court. In *McCreery's Admr's* v. *Ohio River Railroad Co.,* 43 W. Va. 110, it is said: "When contributory negligence is relied on in defense of an action for wrongful injury or death, a hypothetical instruction directing a finding in favor of plaintiff, which omits any reference to the facts tending to establish contributory negligence, and entirely ignores such defense, is erroneous. Nor can such error be cured by other instructions given in behalf of either party." In *Ward* v. *Ward,* 47 W. Va. 766, it is said: "When the court instructs the jury that if they believe, from the evidence, certain hypothetical facts mentioned in the instruction, they must find for the party plaintiff or defendant, as the case may be, but omits from such statement of facts a material fact, which being believed from the evidence, would require a different verdict, such instruction is erroneous, and, if excepted to, and not cured, is ground for reversal."

This instruction was a binding one, requiring the jury to find for the plaintiff upon the finding of the facts named, in the plaintiff's favor. It omits to submit as part of the facts the question of contributory negligence on the part of the plaintiff; and as that question is fairly raised under the evidence, such instruction was fatally defective and calls for reversal of the judgment.

Defendant also objected to plaintiff's instruction No. 2. This instruction seems to refer to Rule 14. If so, it is erroneous for the reason that Rule 14 does not prohibit riding on

cars. It simply provides that persons riding on cars, do so at their own risk. It is equally erroneous if it refers to Rule 15, as there is no evidence tending to show any defense of defendant under that rule, or that that rule is involved.

All of defendant's instructions except No. 1 were given without objection so far as is shown by the record, and it is, therefore, not necessary to consider them.

The defendant, complains that the court erred in passing on some questions on the instruction of evidence at the trial; referring to the questions propounded to and answered by witnesses J. W. Petry, Clyde Sutphin, Hugh Petry and Sam Petry, who were asked whether they had seen any other persons riding on cars in the mine, and what was the custom when one miner wanted to go from one part of the mine to another, about riding. These questions were not objected to. Such evidence tended to show that the defendant was not requiring the rules to be observed.

J. W. Petry, the plaintiff, was asked this question: "Did anybody ever tell you to post any loose slate." It is not perceived what was meant "to post" loose slate. This is possibly a typographical error. If it meant either to "take down" or to "prop up" loose slate, there does not seem to be any reason why he should not have answered the question. This subject was gone into fully afterwards.

Several questions were asked D. M. Campbell, one of the physicians who attended plaintiff after the accident, in regard to the nature and extent of the injuries received by the plaintiff. We see no objection to these questions and answers.

Referring to the condition of the car on which plaintiff was riding at the time of the injury, Frank Payne, a witness for the plaintiff, was asked by defendant whether he had seen the same conditions on cars at other mines besides the Keystone. Witness answered the question, and on motion of the plaintiff the answer was stricken out. This was an irrelevant question. This witness was asked at what besides the Keystone mines he had seen "swell bellies"—cars upon which the middle belt was loose. This question was irrelevant, and it was not error to exclude it. This witness was then examined in relation to certain rules of the defendant company, and the conditions upon which employees were allowed to ride

on the cars in the mines. As the rules had not yet been introduced in evidence, it was not error to refuse to permit such examination in the absence of the rules. This witness should have been permitted to state what the plaintiff told him about orders to remove the post in his conversation with him after the accident; but as the questions were afterwards fully gone into by witnesses on both sides, this error is harmless.

Witness Hugh Petry was asked by defendant whether or not there were other cars then in the same condition, referring to the car on which plaintiff was riding at the time of his injury. This was immaterial.

It was not error to refuse to permit witness G. E. Stanley to be examined in regard to the rules, until the rules were in evidence. This witness was also asked by counsel for defendant, whether or not there was any necessity for the plaintiff to ride on a loaded car in the mine, and answer was refused by the court. This was not error at the time. It did not appear until later in the trial that there was a rule of the company prohibiting such use of the cars.

V. A. Miller was asked by defendant whether the car was heavily loaded, (referring to the car on which plaintiff was riding at the time of the accident). There would seem to be no reason why the court refused to allow this question to be answered. It bears upon the negligence of the defendant. This witness was asked about the condition of this car as compared with the cars in the Keystone mines and the condition of bolts and straps in other mines. These questions were irrelevant.

The judgment of the circuit court will be reversed, the verdict of the jury set aside, and a new trial awarded.

*Reversed, and new trial awarded.*