# CHARLESTON.

## SIMPSON v. CARTER COAL CO.

Submitted November 21, 1916.   Decided December 5, 1916.

1. MASTER AND SERVANT—*Injury to Servant—Care.*

   A coal company which, knowingly, permits its employes habitually to ride on its coal cars to and from their place of work in the mine, is bound to use reasonable care to maintain its tracks and cars in a reasonably safe condition, considering the purpose for which they were designed.  (p. 367).

2. SAME.

   A rule warning all persons, who ride upon any incline, car, engine or motor, that they do so at their own risk, does not absolve the company from liability, if it makes no reasonable effort to prevent its employes from so riding.  (p. 367).

3. SAME—*Injuries to Servant—Relation.*

   In such case the relation of master and servant continues to exist while the employes are riding to and from their work. (p. 367).

4. SAME—*Injuries to Servant—Liability.*

   If the proximate cause of injury to a servant is the combined negligence of the master and a fellow servant, the master is liable. (p. 368).

5. SAME.

   When the evidence proves that plaintiff was injured by the wrecking of a coal train, on which he was lawfully riding from the mine to the tipple, and that the wreck was caused, in part, by the rapid speed of the motor, and in part, by the unsafe condition of the road, the master is liable. (p. 368).

Error to Circuit Court, McDowell County.

Action by Roy Simpson against the Carter Coal Company. There was a judgment for plaintiff, and defendant brings error.

*Affirmed.*

*Anderson, Strother, Hughes & Curd* and *W. B. Kegley,* for plaintiff in error.

*Stokes & Sale* and *Lawson Worrell,* for defendant in error.

WILLIAMS, PRESIDENT:

On the morning of August 10, 1913, Roy Simpson, an employe of defendant, was riding on a trip of loaded cars from the drift mouth to the coal tipple, when a wreck occurred, and one of his legs was so badly crushed that amputation was necessary. He recovered a judgment for $2,500, and defendant brings error.

The sufficiency of the declaration was challenged by demurrer, which was overruled, and we think properly so. The drift mouth is a mile or more from the tipple, near which plaintiff and some of the other miners lived. The declaration avers that, in order to go quickly to and from his place of work in the mine, plaintiff was required and permitted to ride the trip; that it was a custom of the miners to do so, well known to defendant; that it was defendant's duty to use reasonable care to provide safe tracks and appliances to be used by plaintiff in going to and from his work; but that it neglected its duty, in that it provided an insecure and defective track over which plaintiff had to ride; that the track was out of gauge, was improperly spiked and laid on rotten cross-ties,

all of which was known, or could have been known to defendant by the use of proper diligence, and which was unknown to plaintiff; that while plaintiff was riding on a trip from his place of work in the mine to the tipple, the track spread and the rails turned, because of the defective track, thereby wrecking the trip and injuring plaintiff. These facts constitute a good cause of action.

It is common knowledge that mine tracks and cars are not designed for carrying passengers, but it is equally well known that tired laborers will often ride uncomfortable and even unsafe vehicles rather than walk. Most coal companies have promulgated rules warning their employes against riding on the cars, intended to protect both their employes from injury and themselves from liability therefor. Defendant's Rule 14 is as follows: "All persons who ride upon any incline, or upon any car, engine or motor, do so at their own risk." There is ample testimony in the record, tending to prove that little effort was made to enforce this rule, especially against the men who worked on the night shift, of whom plaintiff was one. He swears he never saw the rule and knew nothing of it, and was told by Mr. Altizer, defendant's foreman, who employed him, to catch the trip at the tipple and ride into the mine, and that it was a custom at the mine for all the workmen to ride. Tom Christian, the night foreman, says he found the men all riding the trip, when he was first employed in the mine, and made no effort to stop it; and other witnesses testify to the same facts. True, there is conflicting evidence on this question, but the jury were the judges of its weight. The custom or practice of riding the trip was known, or at least should have been known to defendant, if it had been reasonably observant; and its failure to enforce the rule, proves its acquiescence in its violation. It thus tacitly consented to the use of its coal cars as a means of conveying the workmen to and from work, and, thereby imposed upon itself the obligation to maintain the cars and tracks in a reasonably safe condition, considering the purpose for which such appliances were designed and constructed. It would not be reasonable to expect them to be kept in as safe condition as cars and tracks, built for passenger traffic. Ac-

cording to plaintiff's testimony his contract of employment contemplated his riding to and from work, and although this is denied, the jury must have accepted it as true, and it establishes the relation of master and servant at the time of the accident, notwithstanding plaintiff's labors for the day had ended. Defendant's duty to him, at that time, was at least equal to its duty to its motorman, so far as it relates to the condition of the tracks. *Petry* v. *Cabin Creek Consolidated Coal Co.*, 77 W. Va. 654, 88 S. E. 105. "The master's acquiescence in the use of an appliance for some purpose other than that for which it was intended puts him in the same position as if the appliance had been originally furnished for that purpose." 3 Labatt on Master and Servant, sec. 923. *Perry, Admr.* v. *Electric Railway*, 72 W. Va. 282.

"It is the duty of a railroad company carrying a section hand to and from the place where he works to furnish him a reasonably safe place in which to ride." *Chicago, etc. Co.* v. *O'Donnell*, (Ill.), 72 N. E. 1133; *Cicalese* v. *Lehigh, etc. R. Co.*, (N. J.), 69 Atl. 166; *Heilig* v. *Railway Co.*, (N. C.), 67 S. E. 1009; *Texas, etc. R. Co.* v. *Kelly*, (Tex.), 80 S. W. 1073; *Thomas* v. *Wisconsin, etc. Co.*, (Minn.), 122 N. W. 456; and *Parkinson, etc.* v. *Riley*, 50 Kan. 401, 34 Am. St. Rep. 123.

The next question is, does the evidence prove a breach of duty? Plaintiff was riding a trip of five loaded cars, drawn by a five ton motor, down a three per cent. grade. All the witnesses agree that the wreck occurred at a curve and that the trip was running "pretty fast," but the rate of speed is not otherwise defined by any of them. The motorman did not testify, and some witnesses say he was running at about his usual rate of speed, and that "he generally ran pretty fast." J. R. Booth, who was riding on the trip, swears he was told to go back and take off the brakes, and that he did so, about five hundred yards above the place where the wreck occurred. Charles Christian, who lived three or four hundred yards from the track, but in sight of it, says he saw the trip stop, some three or four hundred yards from where the cars wrecked, and saw a man go back over the cars, "kicking the brakes off." R. C. Christian, who was also on the trip when it wrecked, says the cars ran something like sixty feet on the

ground, after they got off the rails.  The foregoing testimony, considered in connection with the material fact, which is not disputed by any witness, that the trip was running ''pretty fast'', down a steep grade, approaching a curve, proves, by the overwhelming weight of evidence, that the brakes were off, and establishes, as one proximate cause of plaintiff's injury, the negligence of the motorman, a fellow servant, and would preclude recovery, if there was not other evidence tending to prove there were rotten ties in the curve where the wreck occurred, which did not hold the spikes and caused the rail to turn over and the tracks to spread. If this was true, and the jury had to determine whether it was or not from the conflicting evidence, it established the master's negligence as a contributing cause, making defendant liable. Tom Christian, who spiked the rails down just after the wreck, testified that some of the ties ''seemed to be rotten.'' R. C. Christian also swears there were ''some rotten ties.'' A number of witnesses also testify that other wrecks had occurred at the same place.  Hence, notwithstanding the undisputed facts, testified to by some of defendant's witnesses, that the road was built only three years before the accident, with new ties, most of which were oak, and that a heavier motor, hauling a train of eighteen or twenty loaded cars, had passed safely over the road, about an hour or so before the wreck, the court can not say the jury were not justified in finding, upon the conflicting testimony, that the wreck was due, at least in part, to a bad condition of the road.  In view of the conflicting testimony, the question of negligence was for the jury to determine.  The law is well settled that, if injury to a servant is caused by the combined negligence of the master and a fellow servant, the master is liable.  *Lay* v. *Elk Ridge Coal & Coke Co.*, 64 W. Va. 288; 4 Labatt, Master & Servant, (2nd ed.), sec. 1581, and numerous cases cited in note.

No error was committed by the trial court, prejudicial to defendant, in giving the instruction asked for by plaintiff, or in refusing to give certain others requested by defendant. Some of those given for it state the law even more strongly in its favor than they should have done, especially its instruc--

tions Nos. 3 and 8, which limited its liability to the terms of its contract with plaintiff. It may not have expressly contracted to transport him on its cars, to and from his place of work, and yet be liable for his injury. If it knew its employes habitually rode on the trips, and it made no effort to prevent them from doing so, it would be liable for negligence in failing to furnish a reasonably safe track. *Petry* v. *Cabin Creek Consolidated Coal Co., supra.* Defendant's instruction No. 2 was properly refused. It unduly limited the scope of its duty, and its Nos. 4, 9 and 10 give undue effect to the posting of rules and furnishing them to the mine foreman and assistant mine foreman, for distribution among the employes, and were properly rejected. No. 10 was to the effect that the mine foreman could not alter the rules, without defendant's authority and permission to do so, and was not supported by evidence. There is no evidence that the mine foreman changed the rules. They were simply not observed, and almost uniformly violated. Proof of this fact established defendant's acquiescence. A mining company can not relieve itself from all liability, by adopting and promulgating a set of rules, and entrusting the entire conduct of its mining business, and the enforcement of its rules, to the mine foreman, whose statutory duties have to do with the ventilation and the interior of the mine. This accident happened outside, almost a mile from the drift mouth.

Defendant's motion to set aside the verdict was properly overruled, and the judgment is affirmed.

*Affirmed.*