# CHARLESTON.

CITY OF CHARLESTON *ex rel.* ELIJAH PECK *v.* HOWARD DAWSON AND MOSE PUSHKIN.

Submitted January 25, 1922. Decided January 31, 1922.

1. WEAPONS—*Presumption that Discharge of Revolver in Hands of Officer was Negligent May be Rebutted.*

 Where a revolver in the hands of an officer is discharged and inflicts an injury upon another, there is a presumption that the discharge of the weapon resulted from the negligence of the party having it in his possession and under his control, which presumption may be overcome by showing that he was justified in wounding the injured party in order to accomplish a lawful arrest, or in defense of his own person, or by evidence showing that the weapon was discharged as a result of the intereference of some independent outside agency. (p. 153).

2. SAME—*Whether Revolver in Hands of Officer was Discharged by Negligence or Accident Held for Jury.*

 In an action for damages resulting from an injury inflicted by the discharge of a revolver in the hands of an officer, where it appears that the officer was not justified in shooting in order to accomplish a lawful arrest, or in self defense, it is error to instruct the jury to find for the defendant simply upon a showing that the weapon may have been discharged by some third party coming in contact with it or

the officer in whose possession it was. It is for the jury to
determine whether the discharge of the weapon resulted from
that cause upon the whole evidence produced, or was the
result of the negligence of the officer, evidence of which
negligence is afforded by the discharge of the weapon   under
the circumstances.   (p. 155).

Error to Circuit Court, Kanawha County.

Action by the City of Charleston, on the relation of Elijah
Peck, against Howard Dawson and Mose Pushkin. Judg-
ment for defendants on a directed verdict, and plaintiff
brings error.

*Reversed and remanded.*

*D. L. Salisbury* and *Charles J. Van Fleet,* for plaintiff in
error.

*Leo Loeb* and *Henry S. Cato,* for defendants in error.

RITZ, JUDGE:

In this action, brought for the purpose of recovering dam-
ages for the death of Edwin Peck, resulting from the al-
leged negligent discharge of a pistol in the hands of the de-
fendant Dawson, a judgment was rendered upon a directed
verdict in favor of the defendant, to review which this writ
of error is prosecuted.

The defendant Dawson was a police lieutenant of the city
of Charleston. On the evening of the 20th of May, 1917,
upon a complaint made before the police judge of said city,
a warrant was issued for the arrest of Edwin Peck upon a
charge of unlawfully and feloniously assaulting one Mary
Scarbro, and placed in the hands of the chief of police of
said city for execution. It appears that the chief of police
gave this warrant to a police officer by the name of Chapman
for the purpose of executing it, and information having been
conveyed to the police officers that Peck was a dangerous man,
the defendant Dawson and police officer Taylor accompanied
Chapman to make the arrest. They were also accompanied
by a man by the name of Lanham who was not connected with
the police department of the city, but is said in the evidence
to have been a deputy sheriff. Because Dawson was his su-

perior officer Chapman turned the warrant over to Dawson, and the three officers, together with Lanham, got into the patrol wagon which was driven by a man by the name of Farrell to the place where Peck lived. When they got there they found a young lady in the front room, and upon making inquiry of her as to whether or not Peck lived there she informed them that he did, and that he was in a back room, which she indicated to the officers; that he was armed, and had declared his purpose to resist arrest. The officers then went to the door of this room and, finding it locked on the inside, broke it open. When they entered they found the room vacant. ' Being satisfied that Peck was not on the premises Dawson decided to leave officer Chapman at the house for the purpose of arresting Peck when he returned. Officer Taylor also remained with Chapman, as did Lanham. Dawson then returned to police headquarters in the patrol wagon. Upon his arrival there he found that he had the warrant in his possession, and in order that the officers might have the authority for Peck's arrest he immediately returned with the warrant to the house where Peck lived. Upon reaching the house he found one of the men who had remained on the outside, and being of opinion that Peck was in the yard Dawson drew his pistol and began an examination of the exterior of the premises, using his flashlight for the purpose. While this was going on a scuffle was heard in the house, indicating that the officers on the inside had secured Peck, or were attempting to arrest him. Dawson and the man who was with him immediately rushed inside where it was found that Chapman and the other officer were struggling with Peck. According to the testimony of one of the officers, while Peck was struggling with them, he remarked that if they would let him put on his shoes he would go along, but continued his efforts to break away, and this was the condition when Dawson entered. Dawson then told the officers to secure him and place him in the patrol wagon, at the same time stepping into the room, and just to the rear of the two officers who had Peck in charge. The other man who was with Dawson also rendered assistance in securing Peck. Just about this time Peck made an extraordinary

lunge backwards when a pistol went off, the bullet entering Peck's back and mortally wounding him. They removed Peck to the patrol wagon and took him to the morgue. Immediately after the pistol was discharged Dawson inquired who had fired the shot, to which Chapman replied, ''You did,'' Dawson thereupon declared that he had not, but that he could easily tell whether the shot was from his pistol inasmuch as it was fully loaded when he came there, and if there was a vacant chamber evidently the shot was discharged from his revolver. Upon examination it was found that there was a vacant chamber in his pistol, and in this way it was determined that the fatal shot was fired from the weapon in the possession of Dawson. Upon this showing the court below directed the jury to find a verdict for the defendants without requiring them to introduce any evidence to explain the occurrence.

The contention of the plaintiff is that when it was shown that Peck was killed as the result of a wound caused by a bullet discharged from Dawson's weapon there arises a presumption that the same was discharged by reason of some negligence upon the part of the person having the weapon under his control, while the defendants contend that it is necessary to prove some act of negligence, something that was done by Dawson that he should not have done, or something that he failed to do which he should have done, which resulted in the injury; and further that even though it be admitted that negligence might be presumed from the discharge of the weapon in the possession of Dawson, there is an additional showing made here which indicates that it was in all probability discharged by accident. It is argued that the fact that Dawson was carrying his revolver in his hand under the circumstances is no evidence of negligence, and that it may reasonably be presumed that it was discharged by coming in contact with one of the other officers during the struggle that Peck was making in resistance of the arrest. The doctrine of *res ipsa loquitur,* we think, applies in the case of an injury inflicted by the discharge of a firearm where it is shown that the party charged with responsibility for the injury had the sole control of the agency which

90 W. Va.

caused it. Ordinarily a revolver will not be discharged unless some animate agency is employed for the purpose, and to discharge it so that an injury is inflicted upon another under circumstances not justifying the injury would raise a presumption that the party in whose possession and under whose control the weapon was at the time it was discharged was guilty of some negligence in connection therewith. In *Jones* v. *Bridge Co.*, 70 W. Va. 374, there is a discussion of the application of this doctrine of *res ipsa loquitur*. Now it is true that the surroundings are shown in this case in addition to the discharge of the weapon and the resulting injury, and if it appear from this showing that the weapon was discharged from some cause for which Dawson was not responsible, then the action of the court in directing a verdict would be right. While it appears that it was quite probable that the weapon was discharged by one of the other officers being thrown in contact with it by Peck in his resistance of arrest, this does not appear by any positive proof. All that is shown is that at the time the pistol was discharged Peck made an extraordinary effort to free himself, and in doing so jerked the officers who had hold of him with considerable violence in the direction in which Dawson was standing, but the only witness who testifies upon this question says that he does not know whether any of them were thrown in contact with Dawson or the weapon in his hands. It may be that the jury could infer from these circumstances that the pistol was discharged in that way, but the question we have here is, do they have to infer it? The effect of directing the verdict is to say that the jury could not find under the evidence that the pistol was discharged in any other way. We do not mean to say that under the evidence, as it is now presented, the plaintiff would be entitled as matter of law to recover, but we do think that under the facts shown it was a question for the jury to say whether or not the presumption of negligence arising from the discharge of the weapon in the possession of Dawson was overcome by such showing as was made of the circumstances surrounding the parties at the time. It may be that upon this showing the jury could say that Dawson was not negligent in having the

weapon in his hand at the time, and that it was discharged by one of the parties in attendance being hurled against Dawson or the weapon by Peck in his attempt to escape. Of course, when the defendant and the other parties who were present testify the situation may be entirely cleared up, and the exact cause of the weapon being discharged accounted for, at least such facts shown as would make an inquiry as to the cause very easy of answer.

Our conclusion is that upon the case as presented it was for the jury to say whether or not there was negligence on the part of Dawson under the circumstances. We (will, therefore, reverse the judgment, set aside the verdict of the jury, and remand the cause for a new trial.

*Reversed and remanded.*