# CHARLESTON.

CITY OF CHARLESTON *ex rel* ARTHUR PECK, *Admr.* v. HOWARD DAWSON *et al.*

Submitted May 21, 1924.   Decided September 9, 1924.

1.  WEAPONS—*Whether Presumption of Negligence in Accidental Shooting Prisoner Overcome by Evidence Held for Jury.*

    Where an officer enters a room where three other officers have hold of a prisoner charged with a felony and the officer so entering the room is carrying a cocked and loaded pistol in his hand with his finger on the trigger and walks behind the prisoner, who is ineffectually struggling to escape, and the pistol is discharged and the prisoner shot in the center of the back the bullet coming out in front over the heart, which shot causes the death of the prisoner; under these facts there is at least a presumption of negligence upon the part of the officer and whether or not this presumption is overcome by the evidence is a question for the jury. (p. 59).

2.  SAME—*Whether Death by Accidental Shooting Result of Officer's Negligence Held for Jury.*

    In an action for wrongful death where a dangerous instrument such as a loaded pistol is held in readiness to fire, by a defendant, and it is shown that such pistol was under the control and management of the defendant, and that said pistol while so held is discharged and as a result of said discharge, death comes to another. The question as to whether or not the accident arose from the want of due care upon the part of the defendant is a question for the jury. (p. 59).

3.  NEGLIGENCE—*Question for Jury.*

    In a case where there is a charge of negligence upon the part of the defendant and there is appreciable evidence which tends to show negligence upon his part; the question of negligence becomes a question for the jury. (p. 59).

Error to Circuit Court, Kanawha County.

Action by City of Charleston, on the relation of Arthur Peck, administrator, against Howard Dawson and others. Judgment for defendants, and plaintiff brings error.

*Reversed.*

*D. L. Salisbury* and *Charles J. Van Fleet,* for plaintiff in error.

*Henry S. Cato,* for defendants in error.

McGINNIS, JUDGE:

This is an action brought on a bond with collateral conditions given by the defendant Dawson to the City of Charleston. The defendant, Dawson having been appointed a policeman of said city on the 10th day of May 1917, executed his official bond in the penalty of THREE THOUSAND FIVE HUNDRED ($3,500.00) Dollars with the defendant Mose Pushkin as his surety. The conditions of said bond among other requirements bound the said Dawson to "Pay all costs and damages accruing to anyone by the accidental discharge or improper or negligent or illegal discharge or any damage done by the unlawful or careless use of any pistol or weapon which the said Howard Dawson may carry during the term of his office as said policeman."

·The facts as disclosed by the witnesses upon this trial, are substantially the same as stated by Judge RITZ in the opinion of the court upon the second hearing of the case in this court, and we here quote the facts from that opinion, except as herein modified so as to conform to the evidence upon this last trial, 90 W. Va. 150, 110 S. E. 551:

> "The defendant, Dawson was a police lieutenant of the city of Charleston. On the evening of the 20th of May, 1917, upon a complaint made before the police judge of said city, a warrant was issued for the arrest of Edwin Peck upon a charge of unlawfully and feloniously assaulting one Mary Scarbro, and placed in the hands of the chief of police of said city for execution. It appears that the chief of police gave this warrant to a police officer by the name of Chapman for the purpose of executing it, and information having been conveyed to the police officers that Peck was a dangerous man, the defendant Dawson and police officer Taylor accompanied Chapman to make the arrest. They were also accompanied by a man by the name of Lanham, who was not connected with the police department of the city, but is said in the evidence to have been a deputy sheriff. Because Dawson

was his superior officer, Chapman turned the warrant over to Dawson and the three officers, together with Lanham, got into the patrol wagon which was driven by a man by the name of Ferrell to the place where Peck lived. When they got there they found a young lady in the front room and upon making inquiry of her as to whether or not Peck lived there she informed them that he did, and that he was in a back room which she indicated to the officers; that he was armed and had declared his purpose to resist arrest. The officers then went to this room, and, finding it locked on the inside, broke it open. When they entered they found the room vacant. Being satisfied that Peck was not on the premises, Dawson decided to leave Officer Chapman at the house for the purpose of arresting Peck when he returned. Officer Taylor also remained with Chapman, as did Lanham. Dawson then returned to the police headquarters in the patrol wagon. Upon his arrival there he found that he had the warrant in his possession and in order that the officers might have the authority for Pecks arrest he immediately returned with the warrant to the house where Peck lived. Upon reaching the house there was a colored man standing in front, who told him that Peck was around the side of the house on the outside, and being of the opinion that Peck was in the yard, Dawson drew his pistol, cocked it and began an investigation of the exterior of the premises, using his flash light for the purpose. While this was going on a scuffle was heard in the house, indicating that the officers on the inside had secured Peck, or were attempting to arrest him. Dawson and the man who was with him immediately rushed inside, Dawson carrying his pistol in his hand cocked and his finger on the trigger where it was found that Chapman and the other officers were struggling with Peck. According to the testimony of one of the officers, while Peck was struggling with them, he remarked that if they would let him put his shoes on he would go along, but continued his efforts to break away, and this was the condition when Dawson entered. Dawson then told the officers to secure him and place him in the patrol wagon, and at the same time stepping into the room, and just to the rear of the two officers who

had Peck in charge. The other man who was with
Dawson also rendered assistance in securing Peck.
Just about this time Peck made an extraordinary
lunge backwards, when a pistol went off, the bullet
entering Pecks back and coming out in front just
over the heart, and mortally wounding him. They
moved Peck to the patrol wagon and took him to
the morgue. Immediately after the pistol was dis-
charged Dawson inquired who had fired the shot,
to which Chapman replied, "You did." Dawson
thereupon declared that he had not, but that he
could easily tell whether the shot was from his
pistol inasmuch as it was fully loaded when he
came there, and if there was a vacant chamber
evidently the shot was discharged from his re-
volver. Upon examination it was found that there
was a vacant chamber in his pistol, and in this way
it was determined that the fatal shot was fired
from the weapon in possession of Dawson."

This case, or at least some of the questions envolved in it
have been before this court twice before, 85 W. Va. 353, 101
S. E. 728, 90 W. Va. 150, 110 S. E. 551, the first time it came
before this court was on a demurrer to the declaration which
contained three counts. The demurrer was sustained by the
lower court as to the third count. The court holding that the
first and second counts were good except such parts thereof
as alleged that the shooting of plaintiff's decedent was ac-
cidental. The third count of the declaration was based on
the accidental discharge of the pistol.

The action of the lower court was certified here pursuant
to section 1 of chapter 135 of the code and this court affirmed
the ruling of the lower court. It appears that the declara-
tion was amended in conformity with said decision and the
case was tried and the trial court directed a verdict for the
defendants and judgment was accordingly entered and from
that judgment the defendant obtained a writ of error to this
court, and the decision of the lower court was reversed by
this court and the case remanded. 90 W. Va. 150, 110 S. E.
551. The case was again tried which trial resulted in a ver-
dict by a jury for the plaintiff for $3,500.00 and the trial
court set this verdict aside and the case comes here upon a
writ of error from that decision.

The charges in the declaration substantially follow the conditions of the bond, eliminating therefrom "The accidental discharge" which words were treated as surplusage by this court.

The question now arising in this case is, did the trial court err in setting aside the verdict? and in answering this question we will consider whether the trial court gave to the jury improper instructions to the prejudice of the defendant. There were three instructions given, each of which is attacked by the defendant and claimed to be erroneous. The objection to instruction No. 3 is that it entirely ignores the defense of contributory negligence and *Stuck* v. *Kanawha & M. Ry. Co.*, 78 W. Va. 490, 89 S. E. 280 and *Petry* v. *Cabin Creek Consol. Company*, 77 W. Va. 654, 88 S. E. 105, are cited in support of that position. We do not think that the defense of contributory negligence can arise under the facts in this case. This is an action on an official bond with conditions and the declaration charges that these conditions have been breached. Negligence and contributory negligence are based upon knowledge, or what is deemed in law to be the same thing, opportunity by the exercise of reasonable diligence to acquire knowledge of the peril which subsequently results in the injury. In a word negligence and contributory negligence is lack of foresight or forethought. 20 R. C. L. sec. 9. There is no evidence in the case to show that Peck knew or could have foreseen or reasonably anticipated that, when he made the attempt to escape Dawson was behind him with a pistol cocked with his finger on the trigger and pointed at his back; and we do not think the defense of contributory negligence applies in this case and we find no error in the trial court in giving this instruction.

The objection to instruction No. 5 is the same as is made to instruction No. 3 and we find no error in giving it.

Another error assigned is that the verdict is not supported by the evidence. We think that, from the evidence in this case, the finding of the jury should not have been set aside, the evidence appreciatively tends to show that the defendant, Dawson was guilty of negligence. He went into the room where three large men had hold of Peck, with a cocked pistol

with his finger on the trigger, and at the time the pistol fired, whether intentional, accidental or otherwise, it was pointing at Pecks back. The bullet entered the center of his back and came out in front over his heart. At the time when Dawson entered the room where the shot was fired, two officers had hold of Peck's right arm and one had hold of his left arm. No apparent reason did Dawson have for having that pistol in readiness to shoot at the time he entered the room. He, we think, might have been excusable for cocking the pistol on the outside of the house while he was in search of Peck in the shrubbery, but after he heard that the officers on the inside had hold of the prisoner, we see no reason why he should enter the house and go around these struggling men with his pistol cocked and his finger on the trigger. Quoting from the opinion of the court by Judge RITZ in this case, 90 W. Va. 150, 110 S. E. 551:

"It is argued that the fact that Dawson was carrying his revolver in his hand under the circumstances is no evidence of negligence, and that it may reasonably be presumed that it was discharged by coming in contact with one of the other officers during the struggle that Peck was making in resisting the arrest. The doctrine of res ipsa loquitur, we think, applies in the case of an injury inflicted by the discharge of a firearm where it is shown that the party charged with responsibility for the injury had the sole control of the agency which caused it. Ordinarily a revolver will not be discharged unless some animate agency is employed for the purpose, and to discharge it so that an injury is inflicted upon another under the circumstances not justifying the injury would raise a presumption that the party in whose possession and under whose control the weapon was at the time it was discharged was guilty of some negligence in connection therewith."

Res ipsa loquitur is only a rule of evidence resting upon a presumption which may be rebutted by positive proof denying it, the rule may be stated as follows:

"When the thing is shown to be under the management of the defendant or his servant, and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care, it affords reasonable evi-

dence, in the absence of explanation by the de-
fendants, that the accident arose from want of
care. *Owen* v. *Appalachian Power Co.*, 78 W. Va.
605.''

The defendant Dawson, does not know what caused the pis-
tol to fire, if his testimony is to be believed. He did not know
when it fired, did not hear the shot, denied at first that it
was fired from his pistol; all he could say was that it fired
without any effort upon his part to fire it. All the other
witnesses say upon this point, is that the pistol fired at the
time Peck lunged backward against Taylor and shoved
him against Dawson. We think under the facts in this
case that a presumption of negligence was raised and whether
or not this presumption was sufficiently overcome by the
evidence was a question for the jury, and the jury having
passed upon the weight of the evidence by rendering its ver-
dict herein, we think the court erred in setting the verdict
aside, and we therefore reverse the ruling of the lower court,
and reinstate the verdict as rendered, and enter judgment
here in accordance therewith.

*Reversed.*