## UNITED STATES v. FOLK.

### Nos. 6472, 6473.

United States Court of Appeals
Fourth Circuit.

Argued Oct. 16, 1952.

Decided Nov. 10, 1952.

Frank E. Jordan, Jr., Asst. U. S. Atty., Greenville, S. C. (John C. Williams, U. S. Atty., Greenville, S. C., on brief), for appellant.

B. E. Nicholson, Edgefield, S. C. (Joe F. Anderson, Edgefield, S. C., on brief), for appellee.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

DOBIE, Circuit Judge.

Two actions were brought, in the United States District Court for the Western District of South Carolina, under the Federal Tort Claims Act, 28 U.S.C.A. §§ 1346, 2671 et seq., to recover $35,000.00 in Civil Action Number 1170 for the death, and $10,000.00 in Civil Action Number 171 for pain and suffering of John Henry Hammond as a result of a wound from a bullet accidently discharged from the pistol of an agent of the Federal Alcohol Tax Unit while the agent was in the performance of his official duties of participating in a raid upon an illicit distillery located in Edge-

field County, South Carolina. The two cases were tried together before the United States District Judge, sitting without a jury. Findings of Fact, Conclusions of Law and Judgment were entered for the plaintiff in each case, awarding $8,500.00 for death under the Wrongful Death Statute of South Carolina, and $1,500.00 for pain and suffering under the Survival Act, 102 F.Supp. 736. The United States has duly appealed to us.

Shortly after daylight on Saturday, January 13, 1951, Roy L. Cecil, Criminal Investigator, Alcohol Tax Unit, of the United States Treasury Department, acting within the scope of his employment, and while in the active discharge of his duties, accompanied by Criminal Investigators of the Alcohol Tax Unit, together with South Carolina State Constables, conducted a raid on an illicit distillery for the manufacture of whiskey, in Edgefield County, South Carolina. At the still, John Henry Hammond, a colored man, was working, along with three other persons.

Cecil alone walked into the distillery site and observed four men, none of whom he knew, working at the distillery. He drew his forty-five caliber automatic army pistol, which he was then carrying, and called to the men "A Federal Officer—don't run." Immediately after hearing these words, the four men at the distillery fled, with John Henry Hammond and another colored man, later ascertained to be Ernest Holmes, running up the embankment side-by-side near Cecil.

When Cecil started running after Hammond he took the safety off of his loaded forty-five caliber army automatic pistol, and while continuing to hold it in his hand cocked, with the safety off, pursued John Henry Hammond and Ernest Holmes through the woods and up the hill. A short distance up the hill Ernest Holmes turned to the left, ran into Criminal Investigator Cecil Martin and was apprehended.

Hammond continued up the hill with Cecil still in pursuit. At a point approximately one hundred yards from the distil-
lery, and when Cecil was "20 or 25 steps" behind him Hammond jumped over a ditch. As Cecil attempted to jump the same ditch in pursuit, he fell, accidentally discharging the pistol in the direction in which Hammond was fleeing. The bullet entered the right forearm of Hammond, from the back of the arm, severing an artery. Hammond proceeded up the hill with Cecil following him to the crest of the hill, a distance of about sixty-five yards from the place where the pistol was discharged. Upon his arrival at the crest of the hill, Cecil fired two shots from his pistol as signal shots to his associates.

After looking for Hammond about "five or ten minutes," Cecil returned to the site of the distillery. He remained in the vicinity of the distillery, with the others associated with him in the raid, approximately three hours.

The following Sunday afternoon, January 14, 1951, Hammond's body was found by friends, who were searching for him at the instigaton of members of his family, after he had failed to return home. The body was found in a ditch at the bottom of the hill, one hundred and ten yards from the crest of the hill, where Cecil had stopped in his pursuit of Hammond. Hammond had bled to death from the bullet wound in his arm. The next day, blood was found by another officer on several trees at the crest of the ridge at or near the point where Cecil ceased his pursuit of Hammond.

The terrain from the distillery site to where the body of Hammond was found, and along the course of his flight, consisted of woodland from which all large timber had been cut, with some undergrowth, with visibility unhampered, except by the hill and a few small scattered pine trees.

We quote from the Findings of Fact and Conclusions of Law on the part of the District Judge the following extracts which seem to us of primary importance in this case:

"* * * he (Cecil) knew or should have known that he had no right to pursue the fleeing Hammond

through the woods, over rough terrain, with a cocked, loaded automatic pistol in his hand with the safety off and his finger inside the trigger guard and his hand over the grip-safety. Such action on the part of the officer, in my opinion was negligence. He should have foreseen that such handling of his highly dangerous pistol could or would cause injury or death to plaintiff's intestate.

"After his pistol was discharged while he was '20 or 25 steps' behind Hammond, he should have known that the pistol was discharged in the direction in which Hammond was fleeing and he owed him the duty to make a reasonable search of the entire area to ascertain if any injury or death had been inflicted. Although he remained at the distillery site more than three hours he did not look for Hammond more than 'five or ten minutes.' With the assistance of all the six other officers he could have found Hammond and probably saved his life. Other officers, after Hammond's body was discovered the next day, found blood on the ground and on two of the trees in the vicinity. His failure to make a reasonable search under all the circumstances and his failure to notify the other officers of his pursuit and of the discharge of his pistol during the pursuit of Hammond was negligence.

\* \* \* \* \* \*

"(2) The defendant's employee, while acting within the scope of his employment, was guilty of actionable negligence, which was the direct and proximate cause of plaintiff's intestate's death.

"(3) The negligence of defendant's employee was such that the defendant, if it had been a private person would be liable to the plaintiff in both cases under the law of South Carolina, where the injuries and death occurred." [102 F.Supp. 739.]

With the conclusion that Cecil was guilty of negligence, we cannot agree.

Since that was the only basis of liability on the part of the Government, the judgments below must be reversed.

█ It is, of course, elementary that negligence is the breach of a duty. The nature and extent of this duty vary with circumstances, primarily with the relationship between the party injuring and the party who is injured. Thus, in a bailment for the sole benefit of the bailee, the bailee owes to the bailor more than ordinary care while in a bailment for the sole benefit of the bailor, only less than ordinary care is the standard. To a passenger, the common carrier owes the duty of exercising the highest degree of practicable care, while manifestly very much less is the carrier's duty to a trespasser.

█ In Duff v. United States, 4 Cir., 171 F.2d 846, we held that the Government was not liable for injuries inflicted upon a boy through a pistol wound caused by the accidental discharge of a pistol while it was being unloaded by a member of the United States Navy. Said Judge Soper in that case, 171 F.2d at page 850:

"It is plain from this line of decisions that the trespasser or licensee in Maryland must prove something more than ordinary neglect on the part of the owner to entitle him to recover. There must be conduct which manifests a wanton and reckless disregard of the safety of others. There must be at least the flavour of a wilful, intentional wrong."

This seems to be the law of South Carolina. Whitner v. Southern Railway Co., 101 S. C. 141, 85 S.E. 1064; Kershaw Motor Co. v. Southern Railway Co., 136 S.C. 377, 134 S.E. 377.

No case has been cited to us disclosing just what measure of care, under the South Carolina law, was owed here by Cecil to Hammond. Hardly could this measure be higher than the care owed to a mere trespasser. Cf. Rutledge v. Small, 192 S.C. 254, 6 S.E.2d 260; Reynolds v. Griffith, 126 W.Va. 766, 30 S.E.2d 81; City of Charleston ex rel. Peck v. Dawson, 90 W. Va. 150, 110 S.E. 551; Id., 97 W.Va. 55, 125 S.E. 234; Jones v. New York, New Haven

& Hartford Railroad Co., 275 Mass. 139, 175 N.E. 487. For here, Cecil a federal officer, had detected Hammond in the very act of committing a federal crime and Hammond, when called on to surrender, had fled. It was clearly Cecil's job to pursue Hammond and to make every reasonable effort to arrest him.

Under these circumstances, we think there was no negligence in Cecil's pursuing Hammond with Cecil's pistol in his hand, cocked and with the safety catch off. Cecil did not know what course of conduct Hammond might adopt. Had Hammond resisted arrest when caught, or attacked Cecil, the split second saved by having the pistol completely ready might well have meant the difference between Hammond's escape or his arrest, or between Cecil's physical safety and serious physical harm. With sympathy for Hammond, we must not too strictly limit what a federal officer should do in carrying out a dangerous duty imposed on him here by virtue of his office. There was certainly nothing wilful or wanton about Cecil's conduct.

Nor can we agree with the District Judge's finding: "He (Cecil) should have foreseen that such handling of his highly dangerous pistol could or would cause injury or death to plaintiff's intestate." In the case of an accidental discharge of the pistol, it was highly improbable that the bullet would hit Hammond, a rapidly moving target. No one else was visible on the landscape. The real danger from an accidental discharge was to Cecil himself.

Nor do we find any negligence in the failure of Cecil, and the other officers, to make a more extended search for Hammond. Cecil was partly stunned by his fall and Hammond, when last seen by Cecil, was rapidly disappearing over the crest of the hill. Cecil testified that he had no idea that the bullet had wounded Hammond. See, Parrish v. Atlantic Coast Line Railway Co., 221 N.C. 292, 20 S.E.2d 299.

The Federal Tort Claims Act, 28 U.S.C.A. § 2680(h) exempts the United States from liability resulting from an assault and battery. The Government strongly contends that there was no liability here under that exemption. Since our decision of lack of negligence here completely disposes of this case, we need not pass on this rather difficult question. See, Lewis v. United States, 3 Cir., 194 F.2d 689. Cf. United States v. Spelar, 338 U.S. 217, 70 S.Ct. 10, 94 L.Ed. 3; Coates v. United States, 8 Cir., 181 F.2d 816, 19 A.L.R.2d 840. See, also, State v. Dixon, 181 S.C. 1, 186 S.E. 531; Hale v. Barnett, 218 S.C. 415, 63 S.E.2d 57.

It follows from what has been said that both the judgments below must be reversed, and these cases are remanded to the District Court with instructions to enter judgment for the defendant, United States, in each case.

Reversed.